T.C. Memo. 1999-252

UNITED STATES TAX COURT

CHARLES ROBERT SCHETZER, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11089-98.                    Filed July 29, 1999.

Charles Robert Schetzer, pro se.

Deanna R. Kibler, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

ARMEN, Special Trial Judge:  This case was heard pursuant to
the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.[1]

_____

    [1] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the taxable years in
issue, and all Rule references are to the Tax Court Rules of
Practice and Procedure.

Respondent determined deficiencies in petitioner's Federal income taxes for the taxable years 1994 and 1995 in the amounts of $2,855 and $2,893, respectively, as well an accuracy-related penalty under section 6662(a) for the taxable year 1994 in the amount of $571.  After concessions by the parties,[2] the issue for decision is whether section 469(i) is unconstitutional.[3]

## FINDINGS OF FACT

Some of the facts have been stipulated, and they are so found.  Petitioner resided in Omaha, Nebraska, at the time that his petition was filed with the Court.

During the years in issue, petitioner was employed as a telemarketer and received wages in the amount of $27,787 for 1994 and $31,859 for 1995.  Petitioner also operated an automobile rental business.  For the years in issue, the average period of customer use for petitioner's automobiles exceeded 30 days.  On his 1994 and 1995 returns, petitioner claimed Schedule C losses

---

[2]  Respondent concedes that petitioner is not liable for the accuracy-related penalty under sec. 6662(a) for 1994.  The parties agree that computation of the taxable portion of petitioner's Social Security retirement benefits is a mechanical matter the resolution of which is dependent on the disposition of the issue for decision.

[3]  The parties also disagree as to whether certain Schedule C deductions have been substantiated.  However, given our holding on the constitutional issue, we need not consider whether petitioner has substantiated these deductions.

of $18,867 and $17,044, respectively, for the automobile rental business.

In the notice of deficiency, respondent determined that petitioner was not entitled to the claimed Schedule C losses under section 469(a) because petitioner's automobile rental activity constituted a rental activity as defined in section 469(c)(2).

OPINION

Generally, any passive activity loss claimed by a taxpayer is not allowable as a deduction by virtue of section 469(a)(1)(A). A passive activity is any activity that involves the conduct of a trade or business in which the taxpayer does not materially participate. See sec. 469(c)(1). However, section 469(c)(2) and (4) provides that regardless of material participation, any rental activity, is generally a passive activity.[4] Rental activity is any activity where tangible property held in connection with the activity is used by customers or held for use by customers, and the gross income attributable to the activity represents amounts paid principally for the use of the tangible property. See sec. 469(j)(8); sec. 1.469-1T(e)(3)(i)(A), and (B), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988).

---

[4] An exception is statutorily provided for certain taxpayers in real property trades or businesses. See sec. 469(c)(2), (7).

Section 469(i) provides an exception, however, to this rule of complete disallowance. Section 469(i) allows a taxpayer who is a natural person and who "actively participates" in a rental activity to claim a maximum loss of $25,000 per year related to the rental real estate.[5]

Petitioner does not dispute that his automobile rental activity constituted a rental activity as defined in section 469(c)(2). Rather, petitioner claims that he should be entitled to the $25,000 passive activity loss offset available for rental real estate activity under section 469(i). He contends that disallowance of the losses from his automobile rental activity as passive losses is unconstitutional because such disallowance violates the Equal Protection Clause of the Fifth Amendment of the Constitution. Petitioner focuses on the classification provided in section 469(i), which provides for a $25,000 offset only for rental real estate activities.

Generally, statutory classifications are valid if they bear a rational relation to a legitimate governmental purpose. See Regan v. Taxation With Representation, 461 U.S. 540, 547 (1983). A higher level of scrutiny is applied if a statute interferes with the exercise of a fundamental right, such as freedom of

---

[5] The exemption provided in sec. 469(i) is phased out for taxpayers whose adjusted gross income is greater than $100,000. See sec. 469(i)(3)(A).

speech, or employs a suspect classification, such as race.  See, e.g., id; Harris v. McRae, 448 U.S. 297, 322 (1980).

Congress' power to categorize and classify for tax purposes is extremely broad.  See Regan v. Taxation With Representation, supra; Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 359 (1973);  Charles C. Steward Mach. Co. v. Davis, 301 U.S. 548, 584 (1937); Brushaber v. Union Pacific R.R., 240 U.S. 1, 26 (1916); Flint v. Stone Tracy Co., 220 U.S. 107, 158 (1911); see also Barter v. United States, 550 F.2d 1239, 1240 (7th Cir. 1977) (per curiam) (statutory difference in tax rates for married couples and single individuals does not violate Due Process of law of the Fifth Amendment; "perfect equality or absolute logical consistency between persons subject to the Internal Revenue Code [is not] a constitutional sine qua non").  In Regan v. Taxation With Representation, supra at 547-548, the Supreme Court stated:

> Legislatures have especially broad latitude in creating classifications and distinctions in tax statutes.  More than forty years ago we addressed these comments to an equal protection challenge to tax legislation:
>
> > "The broad discretion as to classification possessed by a legislature in the field of taxation has long been recognized. * * * The passage of time has only served to underscore the wisdom of that recognition of the large area of discretion which is needed by a legislature in formulating sound tax policies. * * * Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes.  The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it."

[Citing <u>Madden v. Kentucky</u>, 309 U.S. 83, 87-88 (1940); fn. refs. omitted.]

Thus, Congress has broad authority to grant one class of taxpayers deductions not available to another and to recognize differences between various kinds of business. See <u>Brushaber v. Union Pac. R.R.</u>, <u>supra</u> at 24, and the provisions held constitutional therein (for example, upholding the constitutionality of the corporate income tax, and observing that "The due process clause of the 5th Amendment * * * (does not limit a tax imposed on a class of taxpayers unless it) was so wanting in basis for classification as to produce such a gross and patent inequality as to inevitably lead to the same conclusion (an arbitrary confiscation of property.)"; <u>High Plains Agricultural Credit Corp. v. Commissioner</u>, 63 T.C. 118, 127 (1974). If Congress sees fit to establish classes of persons who shall or shall not benefit from a deduction, there is no offense to the Constitution, if all members of one class are treated alike. See <u>Brushaber v. Union Pac. R.R.</u>, <u>supra</u>; <u>High Plains Agricultural Credit Corp. v. Commissioner</u>, <u>supra</u>.

Clearly, section 469(i) does not interfere with the exercise of a fundamental right or employ a suspect classification. Cf. <u>Regan v. Taxation With Representation</u>, <u>supra</u>. Therefore, we need not apply a higher level of scrutiny but must decide whether the statutory classification in section 469(i) bears a rational

relation to a legitimate governmental purpose.  See Regan v. Taxation With Representation, supra at 547.

Congress was rationally justified in enacting a revenue measure under section 469(i) that preferentially treated certain qualifying taxpayers in the rental real estate business. Section 469 was generally enacted to reduce the number of tax shelters prevalent at the time of its enactment.  The Senate Finance Committee report provides that the extensive use of rental activities for tax shelter purposes under prior law, combined with the reduced level of personal involvement necessary to conduct such activities, made it clear that a change in the law was necessary to eliminate the losses claimed relating to such activities.  See S. Rept. 99-313, at 713-746 (1985), 1986-3 C.B. (Vol. 3) 1, 713-746.  As to the reason for the allowance of the $25,000 offset for rental real estate activities, the Senate Finance Committee Report states:

> For the purposes of the passive loss provision, rental activities are treated as passive without regard to whether the taxpayer materially participates. * * *
>
> In the case of rental real estate, however, some specifically targeted relief has been provided because rental real estate is held, in many instances, to provide financial security to individuals with moderate incomes.  In some cases, for example, an individual may hold for rental a residence that he uses part-time, or that previously was and at some future time may be his primary residence.  Even absent any such residential use of the property by the taxpayer, the committee believes that a rental real estate investment in which the taxpayer has significant responsibilities with

respect to providing necessary services, and which serves significant nontax purposes of the taxpayer, is different in some respects from the activities that are meant to be fully subject to limitation under the passive loss provision.[22]

----

[22]For example, in the case of a rental real estate investor whose cash expenses with respect to the investment (e.g., mortgage payments, condominium or management fees, and costs of upkeep) exceed cash inflows (i.e., rent), tax losses other than those relating to depreciation may not be providing any cash flow benefit.

S. Rept. 99-313, supra, 1986-3 C.B. at 736.

Accordingly, section 469(i) was enacted to provide relief to moderate income taxpayers who invest in rental real estate as a means of financial security, which purpose serves significant nontax purposes of the taxpayer. In light of the congressional intent, it is appropriate that the statute provides a classification relating to rental real estate investment. We therefore think that a rational basis exists for the enactment of section 469(i) and the classification provided therein.

Further, given that Congress has broad latitude in creating classifications and distinctions in tax statutes, we cannot hold that a rational basis does not exist for a classification of the type provided in section 469(i). Cf. Kozlowski v. Commissioner, T.C. Memo. 1979-176. By enacting section 469(i) Congress chose to allow deductions in excess of gross income; i.e., a loss to the extent of $25,000, related to rental real estate activities.

Section 469(i) simply is an exercise by Congress of its broad authority to recognize differences between various kinds of activities. See Brushaber v. Union Pac. R.R., 240 U.S. 1 (1916). As for the disallowance of the loss for other passive activities, such as petitioner's automobile rental activity, the effect is an incidental financial burden and not an impermissible interference. See Maher v. Roe, 432 U.S. 464, 471 (1977); Black v. Commissioner, 69 T.C. 505, 509-510 (1977).

We hold that the legislative classification provided by section 469(i) is constitutional.

Petitioner has made other arguments that we have considered in reaching our decision. To the extent that we have not discussed these arguments, we find them to be without merit.

To reflect our disposition of the disputed issue, as well as the parties' concessions,

Decision will be entered for respondent as to the deficiencies in taxes and for petitioner as to the accuracy-related penalty for 1994.